UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
CABLEVISION SYSTEMS NEW YORK
CITY CORPORATION,

       Plaintiff,    **REPORT AND RECOMMENDATION**

  - v -

                CV 03-2152 (CBA)(VVP)

JOSEPH INCORVAIA,

       Defendant.
------------------------------------------------------------x

POHORELSKY, U.S. Magistrate Judge:

  This matter was referred to me by Judge Amon for a report and recommendation regarding the amount of damages and attorney's fees to be awarded to the plaintiff as against the defaulting defendant Joseph Incorvaia. The court received affidavits in lieu of holding an evidentiary hearing on the damages issues referred to this magistrate judge. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 11 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), 'it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d. Cir.1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir.1993). As no party has objected to that procedure, the court has considered affidavits submitted by the plaintiff, and concludes that they provide a basis for the damages recommended below. Although given notice, the defendant has not submitted any opposition to the plaintiff's submissions.

### 1. *Liability*

By virtue of the defendant's default, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court is required to accept as true the assertions that the defendant purchased and resold "pirate" cable television decoding devices compatible with the cable television technology used by the plaintiff. *See* Complaint ¶¶ 18-22. In addition, the defendant used one such pirate device to intercept and receive plaintiff's cable television programming services, including "premium" and "pay-per-view" services,[1] without the plaintiff's authorization and without payment. *Id.* The court is also required to accept as true that the programming services intercepted by the defendant were radio communications within the meaning of the applicable statute, and that the defendant's conduct therefore violated the statute. *Id.* ¶ 26.

### 2. *Damages*

The plaintiff has elected to seek an award of statutory damages against the defendant under 47 U.S.C. § 605(e)(3)(C)(i)(II), which requires the court to award statutory damages in the amount of not less than $1,000 and not more than $10,000, "as the court considers just," for defendant's unauthorized receipt of plaintiff's programming services. *See* 47 U.S.C. § 605(e)(3)(C)(i)(II) and (a). Plaintiff also seeks full costs, including reasonable attorney's fees, under 47 U.S.C. § 605(e)(3)(B)(iii),

---

[1] "Premium" programming includes services such as Cinemax, HBO and Showtime, which are sold on a monthly basis. "Pay-per-view" programming includes certain movies and special events which are sold on a per event, rather than monthly, basis.

which mandates that the court "shall direct the recovery of full costs, including rewarding reasonable attorneys' fees."

The evidence offered in plaintiff's affidavit establishes the following facts. In February 1994, the defendant subscribed to receive plaintiff's "basic" programming.[2] *See* Affidavit of Donald Kempton in Support of Damages (hereinafter "Kempton Aff.") ¶ 21. Subsequently, the defendant purchased eight (8) unauthorized devices between December 1994 and February 1995. *Id.* ¶ 22. In the absence of contrary evidence, the court concludes that statutory damages may be computed on the basis that the defendant used one device personally and sold the remaining devices. *Cf. Time Warner Cable of New York City v. Browne,* 2000 WL 567015 (S.D.N.Y. May 10, 2000).

The court first addresses the one device conceivably purchased by the defendant for personal use. In setting the amount of statutory damages within the ranges provided by the statute, the court considers as a starting point the value of the programming services to which the defendant had access without paying the applicable fees. Since the average decoder device will unscramble signals for approximately seven years the court infers that the device was used by the defendant for a period of 84 months. During the period of his use of the unlawful device, the defendant was paying the plaintiff approximately $13 per month for his subscription. *See* Kempton Aff. ¶¶ 4, 21. However, during that period, through the unlawful use of the "pirate" device the defendant had access to additional services, including "premium" services, for which the plaintiff charged paying customers an average of $67 per

---

[2]"Basic" service allows the subscriber to receive enhanced reception of broadcast stations and a limited number of additional programming channels. "Family" service, on the other hand, permits the subscriber to receive all of the plaintiff's programming services, with the exception of premium and pay-per-view services.

month over and above the $13 rate paid by the defendant. *Id.* ¶ 4. The defendant also had access through the unlawful converter-decoder to "pay-per-view" programming which included movies and special events (boxing matches, concerts, entertainment events, etc.) for which the plaintiff charged between $4 and $55 per event. *Id* ¶ 5. Because the "pirate" device was designed to defeat the plaintiff's security protections, the plaintiff had no way of knowing how often the defendant actually used either the "premium" or "pay-per-view" services to which the defendant had access. The plaintiff estimates that, on average, considering the "premium" services and the various "pay-per-view" movies and other special events typically programmed in a given month, the defendant had access to programming worth approximately $400 per month. *Id.*

The above evidence establishes that the defendant had access to premium service programming worth $67 per month for approximately 84 months for which he did not pay, a total of some $5,628. As for unauthorized pay-per-view usage, the plaintiff has suggested that the court assume usage on the average of $100 per month, an amount equivalent to one quarter of the programming the defendant could access. The assumption is entirely plausible. Given that the price range for these services is between $4 and $55 per viewing, a total of $100 per month in unlawful pay-per-view usage is a conservative estimate of the services stolen by the defendant. Accordingly the court finds it appropriate to calculate unlawful pay-per-view usage at $100 per month, or $8,400 over the 84-month period in which the defendant possessed the "pirate" converter-decoder. Thus, the value of the services reasonably assumed to have been stolen by the defendant totals approximately $15,000. The court therefore recommends that the statutory maximum award of $10,000 be imposed for the illegal use of one device.

Given the number of devices purchased by the defendant, it is a reasonable inference that most if not all of the devices were resold or distributed by the defendant since no one person would have the need for that many devices. It is also plausible for the court to assume that such devices allowed other unauthorized users to obtain plaintiff's services. As a result of the default, the plaintiff has been unable to conduct discovery in order to substantiate how much of a loss was sustained due to the illegal use of these other seven devices. However, given the above considerations regarding the value of services to which the defendant had access, the court further infers that each device would allow other unauthorized users to intercept programming worth in excess of $10,000 over a seven-year period. In light of the foregoing considerations, and to accomplish the compensatory and deterrence purposes of the statute, the court recommends that the plaintiff be awarded the $10,000 maximum statutory damages for each of the other seven devices obtained by the defendant, for a total award of $70,000.

### 3. *Attorney's Fees and Costs*

The plaintiff also submitted an affidavit and time sheets to establish the amount of attorneys' fees it had incurred up through March 2005 in prosecuting this action. The records reflect that $1339 in attorneys' fees were amassed based on one associate billing 1.0 hour at $165/hour, and three paralegals billing 4.2 hours at $85/hour and 8.6 hours at $95/hour. The court finds that the amounts of time spent and the rates charged are reasonable. The plaintiff's affidavit also established that the plaintiff incurred $150 in filing fees and $48.73 in service of process fees, which are properly reimbursable.

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that statutory damages in the amount of $80,000, and that attorneys' fees and costs in the amount of $1,537.73, be awarded in favor of the plaintiff and against the defendant Joseph Incorvaia.

\*          \*          \*          \*          \*          \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 10 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendant by regular mail and file proof of such service in the record.**

Dated: Brooklyn, New York
July 13, 2005

                                           *Viktor V. Pohorelsky*
                                           VIKTOR V. POHORELSKY
                                           United States Magistrate Judge